UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARK JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:15CV00882 AGF |
| ) | |
| CAROLYN COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This action is before the Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Mark Johnson was not disabled as of the last date of his insured status, and, thus, not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. For the reasons set forth below, the decision of the Commissioner will be affirmed.

## BACKGROUND

Plaintiff, who was born on September 26, 1957, was deemed 30% disabled by the Veterans' Administration ("VA") effective August 4, 1981, due to a service related nervous condition (linked to the explosion on the deck of the USS Nimitz in May 1981 in which Plaintiff was injured and witnessed the death and dismemberment of friends). (Tr. 153.) Effective November 1, 1991, the VA determined that Plaintiff was 100% disabled. (Tr. 157.) Plaintiff filed his present application for Social Security disability benefits on September 24, 2007, alleging a disability onset date of June 1, 1985, due to paranoia,

suicidal ideation, and anxiety attacks.[1]  Plaintiff last met the earnings requirement for Social Security disability insurance purposes on December 31, 1987.

After Plaintiff's application was denied at the initial administrative level, he requested a hearing before an Administrative Law Judge ("ALJ"), and such a hearing was held on September 2, 2009.  By decision dated December 22, 2009, the ALJ found that from Plaintiff's alleged disability onset date through the date his insured status expired,[2] Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but was limited to simple work not requiring a lot of contact with others.  Based on this RFC, the ALJ found that Plaintiff could perform his past relevant work as a post office worker.  In the alternative, the ALJ found that Plaintiff was not disabled based on the Commissioner's Medical-Vocational Guidelines found at 20 C.F.R. Pt. 404, Subpart P, Appendix 2.

The Appeals Council of the Social Security Administration denied Plaintiff's request for review, whereupon Plaintiff sought judicial review of the ALJ's decision.  By Memorandum and Order dated March 1, 2013, this Court reversed and remanded the case

---

[1]  Plaintiff also listed a hearing loss in both ears, but this impairment is not relevant to the present action.

 The record indicates that Plaintiff had filed a previous application for disability insurance benefits that was denied at the initial administrative level on May 20, 1991. (Tr. 116.)  It is not clear from the record whether this decision was administratively appealed.

[2]  To obtain disability insurance benefits, a claimant must establish that he was disabled within the meaning of the Social Security Act not later than the date his insured status expired, in this case December 31, 1987.  *See Price v. Colvin*, No. 4:14 CV 1843 JMB, 2015 WL 9258483, at *3 (E.D. Mo. Dec. 18, 2015).

2

to the Commissioner, on the grounds that the ALJ failed to make specific findings regarding the demands of Plaintiff's past work; and improperly relied on the Guidelines, without the testimony of a vocational expert ("VE"), to support the alternate finding. The Court also found that it was unclear whether the ALJ had considered the medical records from the three years immediately preceding Plaintiff's alleged disability onset date, and directed the ALJ, on remand, to do so and to make that consideration clear in the new decision. *Johnson v. Astrue*, 2013 WL 791856 (E.D. Mo. Feb. 13, 2013) (Magistrate Judge's Report and Recommendation, adopted by Order dated March 1, 2013).

A second hearing was held before a different ALJ on August 2, 2013, at which Plaintiff and a VE testified. By decision dated November 26, 2013, the second ALJ found that during the relevant time period (June 1985 through December 1987), Plaintiff had the RFC to perform the full range of exertional work, with certain nonexertional limitations. Based on the testimony of the VE, the ALJ found that during this time period, Plaintiff could perform certain jobs that were available in the national economy, and that Plaintiff was, thus, not disabled under the Social Security Act. Plaintiff's request for review by the Appeals Council was denied on March 30, 2015. Plaintiff has thus exhausted all administrative remedies and the ALJ's November 26, 2013 decision stands as the final agency action now under review.

Plaintiff argues that while the new ALJ described some of the pre-June 1985 medical records, the ALJ did not give this evidence the analysis it required, and did not even mention certain medical records from this period. Plaintiff also faults the ALJ for not mentioning the Third Party Report completed on October 18, 2007, by Plaintiff's

wife who, at that point, had known Plaintiff for 23 years. Plaintiff argues that due to these errors, the ALJ's decision is not supported by substantial evidence in the record. Plaintiff asks that Court the direct the Commissioner to grant benefits for the relevant period, or alternatively, remand the case again.

**Medical Evidence and First Evidentiary Hearing**

The Court adopts Plaintiff's unopposed Statement of Uncontroverted Material Facts (Doc. No. 17-1) along with Defendant's unopposed Statement of Additional Material Facts (Doc. No. 20-2). Together, these facts present a fair and accurate summary of the medical record, with the following addition: At discharge from his psychiatric hospitalization from June 21 to June 28, 1982, Plaintiff was "considered competent in VA terms," was "not suicidal," had "no signs of any apparent thought disorder," had "no hallucinations," had "no delusions," and "could resume normal activities." (Tr. 345).

The Court also adopts the summary of the first evidentiary hearing as it appears in the Court's March 1, 2013 Memorandum and Order. The Court will discuss specific facts as they are relevant to the parties' arguments.

**Evidentiary Hearing of August 2, 2013 (Tr. 520-36)**

Upon questioning by the ALJ, Plaintiff testified that he could not remember his exact date of birth, but that the ALJ's suggestion of September 26, 1957, sounded correct. Plaintiff testified that he graduated from high school and started college, but did not complete his first year because he became upset when told that he could not learn to build bombs because he was black, and bomb-building was only for the "white techs."

4

Plaintiff testified that had not worked anywhere since 1998, and when asked what he was doing with his time, replied that he had been "staying drugged up by the Veterans Administration." He denied telling the previous ALJ or anyone else that he was self-employed as a draftsman and was doing odd jobs,[3] and denied having had a problem with alcohol or street drugs, except in 1985 after someone shot him and hijacked his car. Since no one wanted to do anything about it, he took drugs "to numb [himself] up to kill [the hijacker]." When the ALJ asked about the minimal treatment he had received from the VA during the relevant period of June 1985 through December 1987, Plaintiff said that the VA had given him a medication that had almost killed him, and that his wife and orderlies had to subdue him; he stated that he was given a shot of Thorazine, and put into the psychiatric ward until he calmed down. But Plaintiff was not sure when this episode had happened.

Upon questioning by his counsel, Plaintiff testified that he did not think he could work currently, or from 1985 to 1987, because he would "get upset and frustrated with people," would forget things, and would fall asleep several times a day. He rambled about injustices he had experienced and said he was angry about a lot of things he saw people doing that he felt showed disrespect for the law. He testified that he was getting approximately $2,000 a month from the VA due to his being deemed 100% disabled.

The ALJ asked the VE whether there were jobs that could be performed by an individual of Plaintiff's age (27 years old as of the alleged onset date) and education, with

---

[3] The transcript of the first evidentiary hearing reflects that, indeed, Plaintiff never told this to the first ALJ.

no past relevant work, who could understand, remember, and carry out at least simple instructions and non-detailed tasks; could respond appropriately to supervisors and co-workers in a task-oriented setting where contact with others was casual and infrequent; and could not perform work that included constant or regular contact with the general public or more than infrequent handling of customer complaints. The VE testified that such an individual could perform the jobs of cleaner and mail sorter.

Plaintiff's counsel asked the VE whether the hypothetical individual could perform those jobs, or any other jobs, if he were "off-task 10% of the time," and the VE responded in the negative. The VE further testified that the individual would not be able to sustain employment if he had disruptive outbursts of anger directed at supervisors or coworkers. Plaintiff's counsel then observed that all through the hearing Plaintiff had been "kind of shaking" and asked Plaintiff about this. Plaintiff answered, "I shake like that because I had been thrown in an explosion."

**ALJ's Decision of November 26, 2013 (Tr. 491-503)**

The ALJ first assumed that Plaintiff performed no substantial gainful activity since his alleged disability onset date of June 1, 1985, through his last insured date of December 31, 1987. The ALJ next found that through the date last insured, Plaintiff had the severe impairments of Post Traumatic Stress Disorder ("PTSD") and a personality disorder, but that these impairments, individually or in combination, did not meet the severity of a deemed-disabling impairment listed in the Commissioner's regulations (20 C.F.R. Part 404, Subpart P, Appendix 1). Specifically, the ALJ found that the "Paragraph B criteria" for Listing 12.04 (affective disorders) or Listing 12.08 (personality disorders)

6

were not met[4] because Plaintiff had only mild restrictions in activities of daily living; moderate difficulties in social functioning, and in concentration, persistence, and pace; and no episodes of decompensation that lasted for an extended duration (two weeks or more). The ALJ noted that Plaintiff's hospitalization from June 21 to June 28, 1982, did not constitute a period of decompensation for an extended duration because it was for less than two weeks. The ALJ also found that the "Paragraph C criteria" for Listing 12.04 were not met. In making these findings, the ALJ referred generally to "[t]he records preceding the claimant's alleged onset date as well as subsequent . . . VA [records]." (Tr. 495.)

The ALJ then proceeded to assess Plaintiff's RFC through the date last insured, and found that Plaintiff had the RFC to perform a full range of work at all exertional levels, with the following non-exertional limitations: Plaintiff (1) retained the capacity to

---

[4]  As relevant here, these conditions are not deemed disabling unless functional limitations known as "Paragraph B criteria" are met. Paragraph B criteria are met if there is a marked functional limitation in at least two of the following categories: (1) daily living; (2) social functioning; (3) concentration, persistence, or pace; and repeated episodes of decompensation (three episode within one year), each of an extended duration (at least two weeks).

Listing 12.04 also has additional functional criteria known as "Paragraph C criteria" that are assessed if Paragraph B criteria are not satisfied. Paragraph C criteria for a deemed-disabling affective disorder are (1) repeated episodes of decompensation, each of extended duration; or (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) a current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

"An impairment that manifests only some of [the required criteria], no matter how severely, does not qualify." *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014) (citation omitted).

understand, remember, and carry out at least simple instructions and non-detailed tasks; (2) could respond appropriately to supervisors and co-workers in a task-oriented setting where contact with others was casual and infrequent; and (3) should not perform work that included constant or regular contact with the general public or more than infrequent handling of customer complaints.

The ALJ found that Plaintiff's hearing testimony was not credible to the extent it was inconsistent with the RFC assessment. The ALJ noted a "myriad of inconsistencies" in the testimony, including Plaintiff not being able to remember his birthday yet remembering specifics of past incidents; Plaintiff testifying that he did not take drugs other than at the time of the car hijacking, while the record includes a diagnosis of drug psychosis; and Plaintiff testifying that he took drugs to be able to kill the car hijacker, while he made statements reported in the record that he was trained to kill by the Navy. In addition, the ALJ pointed to Plaintiff's testimony at the first hearing that was "considerably different in its content and factual recitation." The ALJ stated that Plaintiff's poor work history did not bolster his credibility.

The ALJ commented that the evidence the Court wanted more thoroughly summarized and evaluated was consistent with the above RFC. The ALJ noted a February 18, 1985 psychiatric consultative report (Tr. 306-07) that stated that Plaintiff was in a cooperative mood with a normal affect, had no delusions or hallucinations, was alert and oriented, had a normal memory, and could return to work (at the post office). The ALJ also summarized a mental status examination and treatment note dated May 31, 1985, one day before Plaintiff's alleged onset date, and stated that it was not supportive

8

of Plaintiff's allegations that mental impairments prevented him from performing any work at that time. The note stated that Plaintiff was referred by the post office due to "flashback syndrome." Plaintiff reported to the examining health provider that he did not want to miss work or be hospitalized. (Tr. 336.) The second page of this note is largely illegible but does legibly state that Plaintiff was alert, oriented, very articulate, and cooperative. (Tr. 337.)

The ALJ then summarized the evidence after June 1, 1985, the alleged onset date, and concluded as follows:

> Even considering the records starting with the first psychiatric admission in June 1982, and the only other two psychiatric evaluations prior to the claimant's alleged onset date as required by the United States District Court, these few records of mental health treatment from the first report of any problems through his date last insured fail to reveal abnormal medical signs, laboratory findings, observations or even complaints supporting the allegations that he was mentally unable to work at that time. The claimant was never advised not to work. In fact, . . . he was told he could return to work . . . and even evaluated for VA benefits to receive benefits for vocational rehabilitation purposes which are available to all veterans with a 30 percent or more service-connected condition.

(Tr. 500.)

The ALJ looked to a consultation report dated February 5, 1988 (Tr. 359-60), noting that this was shortly after Plaintiff's date last insured. The report states that Plaintiff came without a referral because he was out of medication (Elavil). Plaintiff reported being under stress and feeling "somewhat depressed." He stated that he was self-employed doing freelance drafting and was supposed to start a tech school in three weeks for a one-year course. The diagnosis was major depression, recurrent, provisional. (Tr. 359-60.) The ALJ believed that these findings "were not particularly severe" and did

9

not persuade the ALJ that Plaintiff had limitations greater than accounted for in the ALJ's RFC assessment.

The ALJ noted that Plaintiff was not given 100% disability by the VA until long after his Social Security insured status ended. Thus, to the extent the VA's disability determination was relevant, it dictated against finding Plaintiff disabled under the Social Security Act during the relevant time period.

The ALJ relied on the testimony of the VE that an individual with Plaintiff's RFC and vocational factors could perform certain jobs that existed in substantial numbers in the national economy, such as cleaner and mail handler. Thus, the ALJ found that Plaintiff was not disabled as defined by the Act.

**Arguments of the Parties**

Plaintiff argues that the ALJ failed to fully analyze evidence from the three-year period (June 1982 through June 1985) before the alleged onset date, as directed by the Court in remanding the case. Plaintiff faults the ALJ for not acknowledging the implications of Plaintiff's psychiatric hospitalization in June 1982. Although the ALJ discussed why the incident did not meet the two-week duration requirement for periods of decompensation, Plaintiff argues this episode should have been further analyzed for insight into Plaintiff's alleged disabling condition as of the alleged onset date.

Similarly, Plaintiff points to observations and assessments surrounding the June 1982 hospitalization regarding Plaintiff's shaky voice, trembling hands, and troubled affect (Tr. 271-89); August 1983 medical notes stating that Plaintiff had PTSD, a severe stutter, tremors in upper and lower extremities, major depression, and paranoid ideas (Tr.

301-09); medical notes form November 1984 after Plaintiff "inadvertently" smoked a PCP-laced cigarette, stating that Plaintiff had suicidal thoughts and possible schizophrenia associated with depression (Tr. 312-13); and the February 1985 overnight hospitalization during which Plaintiff's then mother-in-law reported three months of bizarre behavior and Plaintiff's diagnosis on discharge against medical advice of drug psychosis (provisional) and adjustment disorder (provisional) (Tr. 315-34). Plaintiff argues that because the ALJ failed to fully consider this evidence, the new decision is not supported by substantial evidence, just as the prior decision was not.

Defendant argues that the ALJ complied with this Court's remand order and properly considered the evidence from before, during, and immediately after the relevant coverage period, as demonstrated by the ALJ's "lengthy discussion" of the evidence as well as a discussion of how the evidence in the record supported his RFC finding. Additionally, Defendant points to portions of the ALJ's opinion that reference pre-onset incidents as further evidence of his compliance with the remand order.

In addition, Defendant argues that the Court should affirm the ALJ because he articulated the inconsistencies upon which he relied to discredit Plaintiff's subjective complaints, such as inconsistencies between Plaintiff's claims and objective clinical observations from both medical visits and psychiatric appointments; Plaintiff's "minimal pursuit" of treatment as being inconsistent with his disability claim; and the fact that no physician who examined Plaintiff during the relevant period ever found limitations consistent with Plaintiff's alleged limitations. Defendant further argues that although the ALJ did not discuss the third-party statement from Plaintiff's second wife, this omission

does not warrant reversal because the same evidence used to discredit the claimant's assertions also discredits the third-party's assertions.

## DISCUSSION

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011) (citation omitted). The court "may not reverse . . . merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation

12

process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If not, the Commissioner decides whether the claimant has a severe impairment or combination of impairments. If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace. However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, ___ F.2d ___, No. 15-2829, 2016 WL 3878219, at *3 (8th Cir. July 18, 2016).

If he cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience. *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). Generally, where the claimant suffers from a severe nonexertional impairment, the ALJ must obtain the opinion of a vocational expert instead of relying on the Medical-Vocational Guidelines. *Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).

**ALJ's Evaluation of Evidence Preceding Plaintiff's Alleged Onset Date**

The Court believes that a close question is presented with respect to whether the ALJ adequately considered the medical records from the three years prior to Plaintiff's alleged disability onset date, and in turn, whether the decision that Plaintiff was not disabled under the Social Security Act from June 1, 1985, through December 31, 1987, is supported by substantial evidence in the record as a whole. However, in the final analysis, the Court concludes that the ALJ's decision demonstrates that he did not just summarize the records at issue, but considered their relevance. The Court concludes that the ALJ's decision is not outside the "zone of choice." As the ALJ noted, Plaintiff was not hospitalized from June 1985 through December 1987, and received relatively little psychiatric care during this time.

The February 18, 1985 medical note that Plaintiff could return to work, as well as the VA's rating of Plaintiff as just 30% disabled until well beyond December 1985 also support the ALJ's ultimate conclusion. *Cf. Fisher v. Shalala*, 41 F.3d 1261, 1262 (8th Cir.1994) ("There is no support for [the claimant]'s contention that his sixty-percent service-connected disability rating equates with an inability to engage in any substantial gainful activity under social security standards.").

**ALJ's Failure to Consider Third-Party Information**

Plaintiff's wife completed a Third Party Function Report on October 23, 2007, stating that she had known Plaintiff for 23 years, which would mean that she first knew Plaintiff in 1984, before his alleged onset date in 1985 and his date last insured in 1987. She reported that Plaintiff was always medicated; slept most of the day; had bad

nightmares; did not care how he dressed and had to be reminded to bathe; never prepared food or did household chores; and only went out to go to doctors' appointments. She further stated that Plaintiff's medication made him sleepy and sluggish; he did not trust people and thought they were out to get him; he could only maintain attention for five minutes; his service injuries caused his problems; his medication caused him not to function mentally; he was paranoid and had dreams about the war; and they slept in separate rooms because he had hit her several times in his sleep. Plaintiff's wife stated that she did not know Plaintiff "before he became disabled." (Tr. 126-36).

The ALJ did not mention this report, and Plaintiff argues that due to this error the ALJ's decision is not supported by the record, because the report would have detracted from the ALJ's conclusions that Plaintiff had only mild restriction in his activities of daily living, moderate difficulties with social functioning, and moderate difficulties with maintaining concentration.

Plaintiff is correct that an ALJ is obligated to consider observations of third parties, 20 CFR § 404.1513(d)(4), and, as noted above, the Court must take into account any evidence that fairly detracts from the ALJ's decision. But the ALJ's failure to explicitly address observations of a third party does not require remand where the same evidence that supports discrediting the claimant's testimony also supports discrediting the third party's observations. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

The Court believes a situation of nonreversible error is presented here. Although Plaintiff's wife knew Plaintiff at the time of his alleged disability onset date, and stated that she did not know him before he became disabled, it seems clear that her October 18,

15

2007 report describes Plaintiff's then-current condition, rather than his condition during the relevant time period. Thus the ALJ's failure to mention and consider the report is inconsequential.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment will accompany this Memorandum and Order.

                                              _____
                                              AUDREY G. FLEISSIG
                                              UNITED STATES DISTRICT JUDGE

Dated this 8th day of September, 2016